IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALFREDO BERNAL, JR., #363884, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | 3:07-CV-1300-B |
| | ) | |
| NATHANIEL QUARTERMAN, Texas | ) | |
| Departmentof Criminal Justice, | ) | |
| Correctional Institutions Division, | ) | |
|     Respondent. | ) | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the Court in implementation thereof, this case has been referred to the United States Magistrate Judge. The findings, conclusions and recommendation of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

FINDINGS AND CONCLUSIONS:

Type of Case: This is a *pro se* petition for habeas corpus relief filed by a state inmate pursuant to 28 U.S.C. § 2254.

Parties: Petitioner is currently confined within the Texas Department of Criminal Justice -- Correctional Institutions Division (TDCJ-CID).[1] Respondent is the Director of TDCJ-CID.

Statement of Case: Following a plea of not guilty, a jury convicted Petitioner of aggravated rape on July 22, 1983, in the 195th Judicial District Court of Dallas County, Texas, cause number F83-89839-HN. Punishment was assessed at twenty-five years imprisonment.

---

[1] From May 30, 2007, to October 30, 2007, Petitioner was housed at the Dallas County Jail, pending post-conviction DNA testing proceedings. (Pet's Reply at 4).

Petitioner appealed. On September 7, 1983, Petitioner pled nolo contendere to aggravated kidnapping and aggravated rape in the same court (Cause Nos. F83-89100, F83-89067-N and F83-89319-N). He was sentenced to three concurrent five-year terms of imprisonment. The court of appeals affirmed his twenty-five year sentence. *See Bernal v. State*, No. 05-83-00869-CR (Tex. App. -- Dallas, 1984, no pet).

In 1991, Petitioner was released to mandatory supervision. Following his conviction for failure to register as a sex offender, his mandatory supervision/parole was revoked in September 2003, and Petitioner was returned to TDCJ-CID. In January 2006, prison officials informed him for the first time that he was assigned to the TDCJ Sex Offender Treatment Program (SOTP). Thereafter, in August 2006, Petitioner was charged with four disciplinary violations for "refusing to attend or participate in a required treatment program assignment" -- namely failing to complete a required assignment known as the "long layout worksheet," which required him to acknowledge illicit sexual acts he had committed, regardless of whether any charges were filed.

The charging officer testified that Petitioner used language in his worksheet that was not pre-approved. In his defense, Petitioner asserted that he complied with the SOTP, participated and attended all program activities, and that he had a Fifth Amendment right not to be compelled to incriminate himself on the "long layout worksheet." (Pet's Reply at 5-6). Petitioner was found guilty of all four disciplinary charges. The aggregate punishment imposed included 90 days loss of commissary and recreation privileges, cell restrictions, reduction in line class, from S3 to L1 and then from L1 to L3, and 865 days loss of good time credits. In September 2006, Petitioner was removed from the SOTP and transferred to a different TDCJ Unit. He availed himself of the TDCJ grievance process with respect to the first two disciplinaries.

On July 10, 2007, Petitioner filed this habeas corpus action challenging the SOTP. In his amended petition, he alleged the following grounds: (1) TDCJ punished Petitioner for exercising his constitutional rights as he did participate in all of the program's activities; (2) the SOTP program requires a participant to violate his right against self-incrimination under the Fifth Amendment rights; (3) Petitioner's conviction for four duplicate disciplinary infractions violated the Double Jeopardy Clause of the Fifth Amendment; and (4) TDCJ violated Petitioner's due process and equal protection rights in connection with his enrollment and participation in the SOTP.[2]

In response to the order to show cause, Respondent filed an answer seeking denial of some grounds as unexhausted and procedurally barred and, alternatively, denial on the merits. Petitioner filed a reply brief outlining his claims in details and rebutting the arguments raised in the response.

<u>Findings and Conclusions</u>: In his original habeas petition, Petitioner sought to challenge four disciplinary cases received while enrolled in the SOTP (grounds one through three). He subsequently amended the petition to raise a fourth ground-- that he was involuntarily transferred to and enrolled in the SOTP in violation of his due process rights, and that his equal protection rights were violated when he was punished and three other participants were not.

Petitioner sought the following relief: restoration of the revoked good conduct time

---

[2] Petitioner initially filed this action in the U.S. District Court for the Southern District of Texas, which in turn transferred it to this court.

In disciplinary proceedings, the one-year period starts from date on which Petitioner was found guilty of the disciplinary violation and learned of the loss of good time credits, although tolling is allowed during the pendency of grievance proceeding. *See Kimbrell v. Cockrell*, 311 F.3d 361 (5th Cir. 2002).

credits, restoration of his line class status to the position prior to the false charges, declaratory judgment, declaratory judgment declaring that the SOTP policies, rules and procedures are unconstitutional as applied to pre-70th Legislature inmates with firm mandatory supervision release dates, and injunctive relief barring the application of SOTP in its present form to pre-70 legislature inmates subject to mandatory supervision release. (Pet's Reply at 3).[3]

I.

A state prisoner must exhaust all available state remedies before proceeding with a federal habeas action unless circumstances exist which render the state corrective process ineffective to protect the prisoner's rights. 28 U.S.C. § 2254(b)-(c). A federal court may not grant habeas corpus relief based on a prison disciplinary case if the petitioner has failed to exhaust all administrative remedies, including any appeal. *Baxter v. Estelle,* 614 F.2d 1030, 1031-32 (5th Cir. 1980) (citing *Lerma v. Estelle,* 585 F.2d 1297, 1299 (5th Cir. 1978) (per curiam) (holding that a Texas prisoner who had not exhausted "his clearly available administrative remedies" was properly denied habeas relief in the district court)); *Johnson v. Quarterman*, 2:06cv307-J, 2007 WL 1187999, *2 (N.D. Tex., 2007), accepting findings and conclusions of magistrate judge (requiring exhaustion of administrative remedies in connection with habeas petition challenging prison disciplinary proceeding); *see also Rourke v. Thompson,* 11 F.3d 47, 49, n. 6 (5th Cir. 1993) (noting that state prisoner must exhaust administrative remedies before filing federal habeas action); *Gartrell v. Gaylor,* 981 F.2d 254, 258, n. 3 (5th Cir. 1993) (per curiam) (state prisoners challenging denial of good time credits must exhaust

---

[3] Petitioner also seeks monetary damages. (Pet's Reply at 3). Damages are not cognizable in habeas corpus action such as the one at issue in this case.

4

administrative remedies before seeking federal habeas relief).[4]

Further, Texas courts have found such claims procedurally defaulted absent a showing of cause and prejudice or a fundamental miscarriage of justice. *See Moffatt v. Director, TDCJ-CID,* 390 F.Supp.2d 560, 562-63 (E.D. Tex. 2005) (extending procedural default doctrine to cases involving prison disciplinary proceedings); *Spann v. Dretke,* No. 3:03-CV-2849-D, 2005 WL 1406044 at *2-3 (N.D. Tex. Jun.15, 2005) (same), *findings and conclusions accepted*, 2005 WL 1539270 (Jun. 30, 2005).

A review of the petition and disciplinary grievance records reveals that petitioner did not raise in his grievances the following grounds: grounds 3 and 4 with respect to the first disciplinary case, grounds 1 and 4 with respect to the second disciplinary case, and grounds 1-4 with respect to the third and fourth disciplinary cases. Petitioner asserts that grounds 2-4 are "non-grievable issues" outside the authority of TDCJ because they challenge the underlying SOTP regulations on constitutional grounds. (Pet's Reply at 9-11). He further alleges that since "the facts and circumstances surrounding each disciplinary charge are identical, he was not required to file repetitive grievances about the same continuing constitutional violation." (*Id.* at 11).

---

[4] When challenging disciplinary decisions, state prisoners must exhaust the TDCJ's internal grievance procedure. *See Broussard v. Johnson,* 918 F.Supp. 1040, 1043 (E.D.Tex. 1996) (treating § 1983 action challenging disciplinary proceeding as a § 2254 proceeding, and noting the petitioner had adequately exhausted his administrative remedies through grievance procedure). Texas state courts will not entertain habeas corpus challenges to prison disciplinary proceedings. *Ex parte Palomo,* 759 S.W.2d 671, 674 (Tex. Crim. App. 1988).
Texas prison system has developed a two-step formal grievance process and both steps must be pursued for a grievance to be exhausted. *Johnson v. Johnson,* 385 F.3d 503, 515 (5th Cir. 2004). A grievance is considered sufficient for exhaustion purposes if it gives officials a fair opportunity to address the problem that later forms the basis of the lawsuit. *Id.* at 517.

Exceptions to the exhaustion requirement apply only in "extraordinary circumstances" where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action. *Durden v. Quarterman*, 2008 WL 217717, *5 (S.D. Tex. 2008).

Since the four disciplinary cases at issue were identical and stemmed from the same course of events, the court agrees that Petitioner was not required to present repetitive grievances raising the same claims. Taking the claims as pertaining to all four disciplinary cases, the court concludes Petitioner adequately exhausted the first three grounds for habeas relief.

Petitioner concedes that the fourth ground (which he alleged for the first time in his amended habeas petition) was not presented to TDCJ in any format. (Pet's Reply at 9-11). He asserts that ground four is a "non-grievable issue" outside the authority of TDCJ because it challenges the underlying SOTP regulations on constitutional grounds. (*Id*). The court finds this argument to be meritless. Having failed to show cause and prejudice or a fundamental miscarriage of justice for failing to raise it, ground four is unexhausted and procedurally barred.

Alternatively, the court concludes that the fourth ground fails to state a basis for a federal habeas action and is cognizable in a civil rights complaint under 42 U.S.C. § 1983. (Respondent's Answer at 11-12). The Fifth Circuit Court of Appeals has long recognized that civil rights actions "are the proper vehicle to attack unconstitutional conditions of confinement and prison procedures." *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997). "A habeas petition, on the other hand, is the proper vehicle to seek [immediate or speedier] release from custody." *Id.*; *see also Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam) (same). In *Hill v. McDonough*, 547 U.S. 573, 579, 126 S. Ct. 2096, 2101 (2006), the Supreme Court

reiterated that "[c]hallenges to the lawfulness of confinement or to particulars affecting its duration are the province of habeas corpus," whereas "[a]n inmate's challenge to the circumstances of his confinement . . . may be brought under § 1983." *Id.*

Here the fourth ground clearly relates to conditions of confinement. Petitioner challenges his initial enrollment in and transfer to the SOTP without notice or a hearing. He also raises an equal protection issue alleging that while he was punished for not completing the long layout worksheet as directed, three other inmates were not. Neither claim is directly related to the disciplinary cases, and the ultimate revocation of Petitioner's earned good time credits.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), precludes habeas corpus relief unless the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Petitioner centers his habeas claims on the state created liberty interests of mandatory supervision release and accrued good conduct time. *See Malchi v. Thaler*, 211 F.3d 953, 956-58 (5th Cir. 2000). He alleges that TDCJ revoked his previously earned good time credits to punish him for exercising his Fifth Amendment right against self incrimination. (Pet's Reply at

7).[5]

Respondent concedes Petitioner is entitled to mandatory supervision. *See* "Commitment Inquiry" print-out, reflecting Petitioner as mandatory supervised release eligible on the basis of his 1983 conviction. (Respondent's Answer at Exh. A). In 1983 at the time of his conviction, all offenses were eligible for release on mandatory supervision. The applicable provision of the Texas Code of Criminal Procedure art. 42.12 § 15(c) provided as follows:

> "[a] prisoner who is not on parole, except a person under sentence of death, shall be released to mandatory supervision by order of the Board when the calendar time served plus any accrued good conduct time equal the maximum term to which he was sentenced."

Upon the revocation of his mandatory supervision/parole in 2003, TDCJ forfeited Petitioner's good conduct time credits. *See* Tex. Civ. Stat. art. 6181-1 (stating that "[u]pon revocation of parole or mandatory supervision, the inmate loses all good conduct time previously accrued, but upon return to the department may accrue new good conduct time for subsequent time served in the department."). Therefore, Petitioner will again be entitled to mandatory supervised release once his calendar time and his subsequently accrued good conduct time equal the maximum term to which he was sentenced.

       a.    <u>Due Process</u>

---

[5] Petitioner's other punishments -- loss of commissary and recreation privileges, cell restrictions, and reduction in line class (from S3 to L1 and then from L1 to L3) -- do not implicate due process concerns. *Malchi*, 211 F.3d at 959 (effect of change in prisoner's good-time-earning status upon timing of his release on mandatory supervision was too speculative to afford him a constitutionally cognizable "right" to a particular time-earning status); *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997) (forty-five days of commissary and cell restrictions do not implicate due process concerns); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (loss of opportunity to earn good-time credits, which might lead to earlier parole, was too attenuated to create a liberty interest).

8

Petitioner does not challenge the minimal procedural due process due during his disciplinary proceedings as set out in *Wolff v. McDonnell*, 418 U.S. 539, 563-567, 94 S. Ct. 2963, 2978-80 (1974). (*See* Pet's Reply at 13). Rather he challenges the requirement that there be "some evidence" in the record to support the disciplinary determination. *See Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 454-55, 105 S. Ct. 2768, 2774 (1985); *Broussard v. Johnson*, 253 F.3d 874, 876 (5th Cir. 2001).

In *Hill*, the Supreme Court determined that:

> [a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board.

*Hill*, 472 U.S. at 455. *See Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. Unit A 1981) (quoting *Willis v. Ciccone*, 506 F.2d 1011, 1018, 1019 n. 11 (8th Cir. 1974)) ("No de novo review of the disciplinary board's factual finding is required, but the court must consider whether at least the decision is supported by 'some facts' – ' whether any evidence at all' supports the action taken by the prison officials."). The information provided in a written incident report standing alone can satisfy the "some evidence" standard. *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001).

The court has reviewed the records provided by Respondent in each of the four disciplinary proceedings. Petitioner's allegation that the evidence was insufficient to substantiate the finding of guilt is without merit. The record demonstrates that the fact-finder's conclusion was neither arbitrary nor capricious, *see Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (findings of prison disciplinary hearing shall not be disturbed unless they are

9

arbitrary and capricious), and that there were at least some facts and evidence to support the determination and resultant loss of good-time credits, *see Gibbs v. King*, 779 F.2d 1040, 1044 (5th Cir. 1986) (a hearing officer's finding of guilt requires only the support of some fact, or any evidence at all).

In this case, the offense reports charged Petitioner with failing to complete a required treatment program assignment, namely the long layout worksheet as instructed by staff. Throughout the disciplinary proceedings, Petitioner refused to fill out the long layout worksheet, which required him to admit guilt with respect to past sex offenses in accordance with SOTP guidelines. Petitioner asserts that there is no factual evidence that he refused or failed to complete the assignment because he did complete the worksheet and turned it in on the due date. (Pet's Reply at 15). This argument is patently frivolous. While Petitioner did fill out the layout worksheet, he refused to complete it in accordance with the SOTP guidelines. (*See* Pet's Reply at E8 for a copy of the layout worksheet). He reiterates that he should not have been punished for exercising his Fifth Amendment right against self-incrimination, which the court will address more fully below.

        b.        <u>Fifth Amendment Right Against Compelled Self-Incrimination</u>

The Fifth Amendment Self-Incrimination Clause, which applies to the states through the Fourteenth Amendment, provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; *McKune v. Lile,* 536 U.S. 24, 35, 122 S. Ct. 2017, 2026 (2002); *see also Hoffman v. United States*, 341 U.S. 479, 485-86, 71 S. Ct. 814, 818 (1951). This right remains available to an individual despite his conviction. *See Minnesota v. Murphy,* 465 U.S. 420, 426, 104 S. Ct. 1136, 1141 (1984) ("A defendant does not lose this

10

protection by reason of his conviction of a crime ...."); *cf. McKune,* 536 U.S. at 48-54, 122 S. Ct. at (O'Connor, J., concurring) (applying the full blown Fifth Amendment analysis to a prisoner's claim that the prison's requirement that he participate in a sex offender treatment program violated his constitutional rights). The Supreme Court has recognized that the Fifth Amendment extends not only to criminal proceedings, but to any proceeding in which "the answers might incriminate [the individual] in *future* criminal proceedings." *Allen v. Illinois,* 478 U.S. 364, 368, 106 S. Ct. 2988, 2991 (1986) (emphasis added) (quoting *Murphy*, 465 U.S. at 426, 104 S. Ct. at 1141).

The Supreme Court has upheld the use of sex offender treatment programs which force prisoners to confront and acknowledge their history of deviant behavior. *McKune*, 536 U.S. 24, 122 S. Ct. 2017 (2002) (plurality). Such programs serve a "'legitimate penological objective' in rehabilitation." *Id.* at 34, 122 S. Ct. at 2025. Parolees can be required to participate in similar programs after they leave prison. *Rieck v. Cockrell*, 321 F.3d 487 (5th Cir. 2003).

To establish a Fifth Amendment claim, a litigant must prove two elements: (1) that the testimony desired by the government carried the risk of incrimination, *see Murphy,* 465 U.S. at 435 n. 7, 104 S. Ct. 1136 (explaining that the state may compel answers "as long as it ... eliminates the threat of incrimination"); *Minor v. United States,* 396 U.S. 87, 98, 90 S. Ct. 284, 289 (1969) (rejecting a Fifth Amendment challenge because the risk of incrimination was "only imaginary and insubstantial ... rather than ... real and appreciable" (internal quotation marks omitted)), and (2) that the penalty he suffered amounted to compulsion, *see Lefkowitz v. Cunningham,* 431 U.S. 801, 806, 97 S. Ct. 2132, 2136 (1977) ("[T]he touchstone of the Fifth

Amendment is compulsion ....").[6]

In this case, Petitioner cannot establish the first element – that the information requested on the long layout worksheet carried the risk of incrimination. In *Hoffman v. United States*, 341 U.S. 479, 486, 71 S. Ct. 814, 818 (1951), the Supreme Court held that the privilege against self incrimination is "confined to instances where the witness has reasonable cause to apprehend danger from a direct answer." The Court noted that "[t]he witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself – his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, and to require him to answer if 'it clearly appears to the court that he is mistaken.'" *Id.*

Petitioner alleges that "the long layout worksheet" required him to admit guilt in connection with his underlying criminal convictions as well as in connection with uncharged

---

[6] In *McKune v. Lile*, a civil rights case, the prisoner was asked to accept responsibility for the crime for which he had been sentenced, as well as to complete a sexual history form, which required him to detail all prior sexual activities, regardless of whether such activities constitute uncharged criminal offenses. 536 U.S. 24, 30, 122 S. Ct. 2017, 2023. Focusing on the "compulsion" element, the plurality found that the consequences for the plaintiff's refusal to participate in sex offender treatment -- transfer to less desirable prison facilities -- did not amount to consequences which would compel a prisoner to reveal information about past crimes despite a desire to remain silent. *Id.* at 36. The Court followed the "atypical and significant hardship" standard in determining whether prison rehabilitation programs, much like the SOTP at issue in this case, implicate self-incrimination concerns. *Id.* at 37-38. In doing so, the plurality noted that the inmate's decision not to participate in the sex offender treatment program "did not extend his term of incarceration." *Id.* at 38, 122 S. Ct. at 2027. "Nor did his decision affect his eligibility for good-time credits or parole." *Id.*

In her concurring opinion, Justice O'Connor criticized the majority for adopting the "atypical and significant hardship" standard when evaluating compulsion for the purpose of the Fifth Amendment privilege against self-incrimination in a prison setting. *Id.* at 49, 122 S. Ct. at 2033 (O'Connor, J., concurring). Nonetheless, she agreed with the plurality "that the alterations in respondent's prison conditions as a result of his failure to participate in the Sexual Abuse Treatment Program . . . were not so great as to constitute compulsion." *Id.*

past offenses. (Pet's Reply at 21). He indicates that the SOTP did not afford him immunity with respect to uncharged past offenses, and that the therapist was required to report any criminal conduct to authorities. (*Id.*).

Petitioner had no reasonable cause to apprehend danger from any questions with respect to his 1983 convictions. By 2006, when TDCJ asked him to admit guilt as to his underlying criminal convictions during the course of the SOTP, those convictions had long become final. Petitioner does not allege that any appeal or post-conviction proceedings remained pending, apart from an application for post-conviction DNA testing, which was finally denied in October 2007. He argues that he didn't plead guilty as to any of his sex offenses -- the jury found him guilty in the first case, and he pled nolo contendere (which he now claims was involuntary) in the other two cases -- and that admitting guilt during the SOTP would expose him to perjury charges. (Pet's Reply at 22). This argument lacks merit. The three-year statute of limitations for perjury offenses in Texas had long passed by the time TDCJ asked Petitioner to admit guilt as to his underlying criminal offenses during the SOTP. *See* Tex. Code Crim. Proc. art. 12.01(6).

Moreover, double jeopardy considerations would preclude any admission by Petitioner, regarding any of his prior sex offenses, for which he was previously convicted, from being used against him. Therefore, the possibility of any admission to those sex offenses incriminating Petitioner in the future is no more than a remote and speculative possibility, which is insufficient to trigger the Fifth Amendment's protection against self-incrimination. *See Neal v. Shimoda,* 131 F.3d 818, 833 (9th Cir. 1997) (holding that a prison treatment program, requiring inmates to admit guilt of the crime for which they were imprisoned, did not violate the Fifth Amendment)); *Rice v. Michigan Parole Bd.*, 2005 WL 2297463, 3-4 (W.D. Mich.,2005) (no violation of Fifth

13

Amendment right when parole board cited only Petitioner's refusal to admit to the sexual offenses for which he was convicted). *See also Hawkins v. Morse,* No. 98-2062, 1999 WL 1023780, at *2 (6th Cir. 1999) ("[I]t cannot be said that the alleged pressure to admit that he committed the crime for which he is incarcerated in order to improve his chances for parole forces Hawkins to incriminate himself in violation of the Fifth Amendment."); *see also Ohio Adult Parole Auth. v. Woodard,* 523 U.S. 272, 286, 118 S. Ct. 1244 (1998) (Ohio's voluntary clemency interview did not violate Fifth Amendment privilege against self-incrimination).

With respect to uncharged past offenses, Petitioner's claim fares not better. The long layout worksheet, attached to his reply (*see* Pet's Reply at E8), reflects that Petitioner denied any wrong doing whatsoever. He does not indicate that he was under investigation for any past offenses, or that he feared future inquiries into any previous sexual conduct. Having denied that he did anything wrong, apart from his underlying criminal convictions, Petitioner cannot establish that he had reasonable cause to apprehend danger from any questions with respect to uncharged past offenses. *See Hoffman*, 341 U.S. at 486, 71 S. Ct. at 818. As the Supreme Court noted in *McKune v. Lile*, the SOTP "serves an important social purpose," there is "no indication that . . . [it] is an elaborate attempt to avoid the protections offered by the privilege against compelled self-incrimination," and "[i]t would be bitter medicine to treat as irrelevant the State's legitimate interests and to invalidate the [program] on the ground that it incidentally burdens an inmate's right to remain silent." 536 U.S. at 41, 122 S. Ct. at 2028.[7]

---

[7] Petitioner relies on *United States v. Antelope,* 395 F.3d 1128 (9th Cir. 2005). In that case, one of the petitioner's probation terms was to participate in the Sexual Abuse Behavior Evaluation and Recovery program (SABER). As part of SABER, the petitioner was required to complete a sexual history biography and a full disclosure polygraph verifying his full sexual history. *Id.* at 1131-32. The petitioner, therefore, was required to disclose not only the sexual

14

c. Double Jeopardy

Next Petitioner alleges that TDCJ punished him four times for the same disciplinary offense in violation of the Double Jeopardy Clause. It is well establish that the Double Jeopardy Clause does not apply to prison disciplinary proceedings. *See Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S. Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) (prison disciplinary proceedings are not criminal in nature); *Smith v. Jackson*, 2000 WL 1598124, 1 (5th Cir. 2000) (unpublished per curiam) (the right to be free from double jeopardy does not apply to prison disciplinary proceedings); *Reed v. Quarterman*, 2007 WL 1500862, *3 (N.D. Tex. 2007) (accepting findings, conclusions and recommendation) (same); *Turner v. Johnson,* 46 F.Supp.2d 655 (S.D. Tex. 1999) (same).

RECOMMENDATION:

Petitioner cannot establish that the state court's adjudication on the merits resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

---

history pertaining to the sex crimes for which he had been prosecuted and convicted, but past sexual history that could result in new criminal prosecutions. The Ninth Circuit held that requiring the petitioner to complete the SABER program violated his Fifth Amendment privilege against self-incrimination where state law requires the program counselor to report participants' sex crimes against minors to authorities. *Id.*

*Antelope* is distinguishable. Unlike Petitioner who completed the long layout worksheet and denied any uncharged past offenses, Antelope steadfastly refused to reveal his full sexual history. *Id.* at 1135. The court found it proper to infer that his sexual autobiography would, in fact, reveal past sex crimes. *Id.* Such an inference was consistent with the belief of his counselor, who suspected Antelope of having committed prior sex offenses. *Id.*

For the foregoing reasons, it is recommended that the petition for a writ of habeas corpus be DENIED.

A copy of this recommendation will be transmitted to Petitioner and counsel for Respondent.

Signed this 18th day of April, 2008.

*/s/ Wm. F. Sanderson, Jr.*
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

## NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten days after being served with a copy of this recommendation. Pursuant to *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten-day period may bar a *de novo* determination by the district judge of any finding of fact or conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.